AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Middle District of Pennsylvania

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Oral secretion (epithelial cells) from the buccal cavity of John Joseph WEIKEL on four cotton swabs (buccal swabs) | ) ) ) ) ) ) | Case No. 1:24-MC-  0774 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

John Joseph Weikel (DOB: 07/06/1974)

located in the _____Middle_____ District of _____Pennsylvania_____, there is now concealed *(identify the person or describe the property to be seized)*:

Oral secretion (epithelial cells) from the buccal cavity of John Joseph WEIKEL on four cotton swabs (buccal swabs); See "Attachment A".

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. Section 5861(d) | Possession of an Unregistered Firearm |

The application is based on these facts:

I, Carmen Dvorak de Morales, a Special Agent with the Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Carmen Dvorak de Morales; SA-FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____Telephone_____ *(specify reliable electronic means)*.

Date:   09/30/2024

*Judge's signature*

City and state: Harrisburg, Pennsylvania

Daryl F. Bloom, Chief U.S. Magistrate Judge
*Printed name and title*

**CONTINUATION SHEETS**

**INTRODUCTION AND AGENT BACKGROUND**

1.      I, Carmen Dvorak de Morales, am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation ("FBI") and have been employed with the FBI since October 2019. Prior to joining the FBI, I was an Assistant District Attorney with the Cook County State's Attorney's Office in Chicago, Illinois. I am a graduate of the FBI Academy in Quantico Virginia. I am currently assigned to the FBI Philadelphia's Allentown Resident Agency.

2.      During my tenure as an FBI agent, I have participated in many investigations involving international and domestic terrorism, interstate threatening communications, drug trafficking, financial institution fraud, human trafficking, unlawful possession of firearms and destructive devices, and other federal violations. During those investigations, I executed numerous search and seizure warrants which resulted in the arrest of individuals who have committed violations of the federal criminal code.

3.      The information contained in this affidavit is known to me personally or has been relayed to me by other law enforcement officers, or individuals assisting law enforcement officers, as indicated below.  Because this affidavit is being submitted for the limited purpose of securing authorization to obtain four buccal cavity swabs from John Joseph Weikel, I have not included every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause.

1

## PROBABLE CAUSE

4.      On May 31, 2023, a maintenance worker at a privately owned residential apartment building discovered a destructive device in the ceiling of an unoccupied apartment at 32 West Main Street, Girardville, Schuylkill County, Pennsylvania. This location is a three-story structure divided into eight separate apartments. Upon making this discovery, the worker contacted local authorities who in turn contacted an FBI Special Agent Bomb Technician ("SABT") and Pennsylvania State Police's ("PSP") Hazardous Device and Explosives Section ("HDES").

5.      FBI SABT, PSP HDES troopers, and local law enforcement responded to the location. Upon searching the apartment, two destructive devices were discovered at the property. Both devices were discovered hidden behind ceiling tiles in the third-floor apartment. Both devices were x-rayed at the scene and subsequently disrupted.

6.      After interviews with multiple residents of the apartment building, FBI agents and PSP troopers identified John Joseph Weikel ("Weikel"), date of birth                     as a prior tenant of the apartment where the devices were located.

7.      On May 31, 2023, materials from the two devices were collected and submitted for testing. A $CO_2$ cartridge from one of the devices remained intact following the disruption of the device. Subsequently, the $CO_2$ cartridge was disassembled by technicians. A sample of gray/black powder was removed from the cartridge and sent to the FBI laboratory for testing. A burn test was performed on a second sample of gray/black powder removed from the same cartridge. The burn test yielded a positive result for the presence of energetic material.

8.      On June 12, 2023, Weikel was interviewed at the Lehigh County Courthouse by a PSP trooper. In an audio recorded interview, after being provided his *Miranda* warnings, Weikel

2

confirmed he lived alone on the top floor apartment located at 32 West Main Street for about a year. When asked about the devices found in his former apartment, Weikel stated, "I would never put something like that ever near my family or anyone else. Am I capable? Yes. Did I? No." As the interview progressed, Weikel admitted that his DNA would likely be found on the devices. He conceded that he had the skill to build a bomb but would never do so with the intent to hurt anyone. Weikel said he had the requisite knowledge to make the bombs and displayed familiarity with specific components including micro-switches and power sources. Later, Weikel admitted to making the devices. When shown photographs of the first device, he identified the components used to create it including a micro switch and power source. With respect to the second device, he identified a micro switch and $CO_2$ cartridge. He identified the containment box for the second device as his old iPhone box. Weikel indicated that upon pressure release of the micro switch the device would detonate.

9. On January 29, 2024, the previous owner of the building located at 32 West Main Street was interviewed by the affiant. The previous owner stated Weikel was a tenant in the building and resided in the unit in which the devices were located. Weikel resided in the apartment from July 25, 2019, until his eviction on June 28, 2021. On June 28, 2021, the previous owner and Weikel attended an eviction hearing. After the eviction was granted at the hearing, Weikel no longer had access to the apartment. The previous owner had the locks changed and Weikel's property remained inside. The previous owner cleaned out the apartment. Later in December 2021, other tenants moved into the apartment. The previous owner described the ceiling in Weikel's old apartment as a drop ceiling with individually placed tiles. On one occasion, the previous owner observed Weikel pull a firearm out of the drop ceiling.

10.     On April 24, 2024, Weikel was interviewed by the affiant and an FBI task force officer. During the interview, Weikel confirmed he built the two devices found in his former apartment. At the time he constructed the devices, Weikel acknowledged he was in a bad state of mind. Weikel described how he constructed the two devices. He estimated he manufactured the devices in 2019 or 2020. One device was made with an old iPhone box. This device was equipped with a $CO_2$ cartridge filled with black powder. There were two pins on the sides of the box to keep the lid affixed. The second device was made using an old drill case equipped with a power source, microswitch, and PVC pipe filed with black powder. To do so, he extracted black powder from old rifle ammunition and mixed fast-burning pellets with three diverse types of powder to create granules of three different shapes. Weikel admitted he put the two bombs into the ceiling tiles of his apartment at 32 West Main Street. Weikel explained he put the devices in the ceiling and then he went to work the next day. He returned home from work to find that someone had broken into his apartment. Worried that someone had stolen the devices, Weikel removed all the ceiling tiles in the apartment in search of the devices but was unable to find them.  He was unable to explain how and when they were returned to their original hiding spot.

11.     On April 22, 2024, the FBI laboratory issued a report describing the results of a deoxyribonucleic acid ("DNA") analysis on recovered components of the two above-described devices. The report detailed the following:

      a.  Item 1(1) included wires, wire twists, tape, electrical components, shrink wrap, and a piece of plastic. Through the analysis, male DNA was obtained from item 1(1). Item 1(1) was interpreted as originating from two individuals and had DNA suitable for comparison purposes.

4

b. Item 3(1) included a piece of paper, cardboard, plastic, wire, tape, adhesive, rubber, manufacturer's label, metal, thumbtack, tape, connector, and electrical components. Through the analysis, male DNA was obtained from item 3(1). Item 3(1) was interpreted as originating from two individuals and had DNA suitable for comparison purposes.

c. Item 4 included pieces of metal, wire, and tape from the devices. Through the analysis, multiple items within Item 4 were found to have DNA suitable for comparison purposes.

12. On April 30, 2024, the FBI Laboratory issued its final laboratory report in this case. The FBI examiner identified the devices as "the rendered safe remains of two partially assembled improvised explosive devices (IEDs)." Per the examiner, "properly assembled and initiated, these types of IEDs can cause property danger, personal injury, and/or death." Additionally, Examiner Krueger rendered the following conclusion: "It is the opinion of this Explosives and Hazardous Devices Examiner that both of the IEDs in this report meet the technical elements of a destructive device. Specifically, IED #1 incorporated a hard-plastic main charge container and IED #2 incorporated a metal main charge container in their design. This demonstrated weaponization characteristics due to the fragmentation effect that the IEDs would create. An additional weaponization characteristic in both IEDs were the use of victim operated fuzing systems."

13. On May 28, 2024, in the United States District Court for the Middle District of Pennsylvania, a grand jury indicted Weikel for two violations of Title 26, United States Code, Section 5861(d) Possession of an Unregistered Firearm.

14.     On June 4, 2024, Weikel was arrested by the affiant and Agents/TFO from the Allentown RA. Weikel was transported to the William J. Nealon Federal Building and United States Courthouse in Scranton, Pennsylvania. After his Initial Appearance, Weikel was placed into the custody of the United States Marshals Service ("USMS").

15.     As of the signing of this warrant, Weikel continues to be held in the custody of the USMS and is housed at the Lackawanna County Prison located in Scranton, Pennsylvania.

16.     Based on my training and experience, I know that DNA recovered through forensic analysis of the device components by experts at the FBI laboratory can be compared to a DNA profile obtained from a known sample including Weikel's DNA profile. Weikel's DNA profile can be obtained through four buccal cavity swabs, that is, four swabs from the inside cheek area, of Weikel.

17.     I therefore seek the issuance of a warrant to obtain four buccal swabs from John Joseph Weikel so that his DNA profile may be compared to the DNA profile developed from the forensic analysis of the device components collected during the investigation.

18.     Based on the above, it is submitted that probable cause exists for the issuance of a warrant for the seizure of four buccal cavity swabs from John Joseph Weikel to aid our investigation to determine whether Weikel violated Title 26, United States Code, Section 5861(d) Possession of an Unregistered Firearm.

## EXHIBIT A

The following items to be taken from the body of John Joseph Weikel (DOB: ███████████)

Oral secretion (epithelial cells) from the buccal cavity of John Joseph Weikel on four cotton swabs (buccal swabs).